**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JIJIN HUANG,** | |
| **Petitioner,** | **Civil Action Nos. 26-813, 26-2962 (KSH)** |
| **v.** | |
| **DELANEY HALL DETENTION FACILITY, et al.,** | **MEMORANDUM OPINION** |
| **Respondents.** | |

This matter comes before the Court on Petitioner Jijin Huang's Second Petition (Civ. No. 26-813, ECF 1) and Third Petition (Civ. No. 26-2962, ECF 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

On December 3, 2025, Huang was arrested by Immigration and Customs Enforcement ("ICE") at his scheduled ICE reporting appointment and detained at Delaney Hall. On December 5, 2025 he filed a First Petition for habeas relief (Civ. No. 25-18213) in this Court, seeking release or a custody redetermination by way of a bond hearing. The same day, the Court enjoined Huang's transfer from Delaney Hall and removal from the United States pending further order of the Court. (First Petition, Civ. No. 25-18213, ECF 3.) On December 10, 2025, this Court issued an Order to Answer (First Petition, ECF 4); respondents timely filed a response (First Petition, ECF 6) and on December 17, 2025 the Court granted habeas relief by way of an order directing that Huang be afforded a bond hearing (First Petition, ECF 7). On December 9, 2025 respondents filed a status report (First Petition, ECF 8) representing that a bond hearing was held on December 24, 2025[1]

---

[1] This date is incorrect. As indicated *infra*, the bond hearing was rescheduled from December 24 to December 23, 2025.

after which the Immigration Judge denied bond.  Upon the representation that the relief ordered, a bond hearing, was held, this Court entered an order closing the case (First Petition, ECF 9).

The Court now addresses Huang's Second Petition, which contends the bond hearing was conducted in violation of Huang's rights of due process, and his Third Petition seeking habeas relief on grounds that his continued detention has become unreasonably prolonged.  The material facts were laid out in his First Petition and are not in dispute.  Huang, a noncitizen and native of China, entered the United States on June 26, 2023, near San Luis, Arizona, from Mexico.  (Record of Deportable/Inadmissible Alien, Civ. No. 26-813, ECF 8-3 at 4.)  Huang is in active removal proceedings and had a master calendar hearing for his pending asylum application scheduled for March 4, 2026 before the New York City Immigration Court.  (First Petition, Civ. No. 25-18213, ECF 1-1 at 1.)  He has no criminal history and has complied with all ICE requirements.  (*Id.*) Huang resides in New York.  (First Petition, ECF 1 at 2.)  On December 3, 2025, Huang appeared for a scheduled ICE check-in at 26 Federal Plaza in New York City and was arrested there by ICE. (*Id.*)  Huang remains detained at Delaney Hall, in Newark, New Jersey.

## I.    <u>STANDARD OF REVIEW</u>

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).  District courts have the power to grant writs of habeas corpus.  28 U.S.C. § 2241(a).  A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  The burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

2

## II.  DISCUSSION

The issues before the Court are presented in the Second Petition:  whether the December 23, 2025 bond hearing comported with due process in light of lack of notice of the bond hearing to Huang's attorney and the Immigration Judge's determination that Huang was a flight risk based on evidentiary gaps resulting from that lack of notice; and in the Third Petition:  whether Huang's continued detention has become unreasonably prolonged.

### A.  PART ONE – Huang's Second Petition

The centerpiece of Huang's Second Petition is the transcript of the December 23, 2025 bond hearing before Immigration Judge Arya Ranasinghe.  (Bond Hearing Tr., Civ. No. 26-813, ECF 8-1.)  Huang's attorney Chun W. Wong, who has represented him throughout these petitions, appeared in person, as did counsel for the Department of Homeland Security Joseph Chapman.  Huang appeared via Webex.  After the preliminaries, IJ Ranasinghe identified the record as consisting of this Court's Order of December 17th that required an individualized bond hearing within seven days, and the I-213 official record filed by DHS.  At that point she turned to attorney Wong, noting "I don't have any supporting evidence in the record."  (*Id.* at T5:10-11.)  Wong immediately told the court that he was unaware of the hearing until the night before.  (*Id.* at T5:12-17.)  He made verbal representations on behalf of his client:  Huang had never been arrested, had made every ICE appointment, had a pending timely asylum application with a scheduled Master Calendar hearing.  (*Id.* at T5:17-21.)  Counsel for the DHS opposed, acknowledging that his adversary had short notice of the bond hearing but noting that "the record is void of any type of tangible evidence to demonstrate that the respondent [Huang] is not a flight risk.  We're talking about no evidence of fixed address, familial ties, communal ties, and whatnot. . . .  I just don't

3

think the equities or communal ties are here for the -- the respondent to warrant bond." (*Id.* at T6:2-17.)

Then, apparently in reference to Wong's representation that he only learned of the hearing the night before, IJ Ranasinghe marked as Exhibit 3 "a hearing notice that was sent to the respondent and that was served December 19th. So I just want to note that this matter wasn't scheduled just, you know, recently." (*Id.* at T6:21-23.) Then she addressed Wong directly.

> Counsel, I appreciate that you did not have notice, but the respondent received notice and that's because we did not have a new entry of appearance upon the remand from the District Court with the filing of the order with District Order [sic]. But the respondent was served with a hearing notice on December 19th indicating that the matter was scheduled for a hearing today. So he was aware.

(*Id.* at T6:25-7:4.)

After a brief exchange with Huang's attorney, who sought to rebut the suggestion Huang was a flight risk by pointing out he was detained in the act of reporting to ICE as he was scheduled to do, IJ Ranasinghe issued her ruling.

> After careful consideration of the record as a whole, the Court is going to deny the respondent's request for a bond redetermination at this time. The Court finds that the respondent has not demonstrated that he is not a flight risk. The Court accepts counsel's representations that there is a pending motion for asylum. I will even accept counsel's representation that there -- it is timely filed. I will also accept DHS' representation that it is a bare bone application and that it actually falls within the Board's holding in *Matter of C-A-R-R-* and is subject to pretermission on that basis. I'll also note from -- that the Court has no evidence that the respondent has a sponsor in the United States, nor that he has family ties. I have no record of a fixed permanent address upon release. No information about employment. So, for those reasons, the Court finds that the respondent has not demonstrated that he's not a flight risk.

(*Id.* at T7:18-8:3.)

Huang claims that the December 23, 2025 bond hearing violated due process based on the failure to notify his attorney, inadequate service upon a non-English speaking petitioner, and further challenges the Immigration Judge's bond determination. (Second Petition, Civ. No. 26-

813, ECF 1.)  Respondents submitted a response on February 11, 2026.  (Second Petition, ECF 8.)

On February 18, 2026, after the Court granted leave, Huang filed a supplemental memorandum of

law with supporting exhibits.  (Second Petition, ECF 9.)  In his supplemental memorandum, Huang

argues that the failure to notify his attorney deprived him of a meaning opportunity to present these

exhibits, important evidence such as sponsor documentation and supporting affidavits,

documentary proof of community ties and stable housing, and Huang's Form I-589 asylum

application.  (*Id.* at 2-3.)

He contends that he suffered actual prejudice because IJ Ranasinghe rested her findings on

a lack of evidence, a "void," as respondents' attorney put it, directly caused by counsel's inability

to present existing evidence that would have satisfied his burden at the bond hearing.  In ECF 9-2

Huang submits his sponsor's affidavit, identification documents, his Form I-589 asylum

application, and a utility bill.  Reviewing these, the Court concludes that had they been presented,

counsel for the DHS could not have argued that "the record is void of any type of tangible evidence

to demonstrate the respondent is not a flight risk" or that there was "no evidence of fixed address,

familial ties, communal ties, and whatnot."  (Bond Hearing Tr., Civ. No. 26-813, ECF 8-1 at T6:2-

17.)

"[T]he Due Process Clause applies to all 'persons' within the United States, including

[noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas*, 533 U.S. at 693.  In the context of removal proceedings, "due process requires notice

reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to

be heard." *Nazarova v. INS*, 171 F.3d 478, 482-83 (7th Cir. 1999).  Although a noncitizen may not

challenge the outcome of a bond hearing through a habeas petition, he may challenge the

fundamental fairness of the procedures used during his bond hearing.  *See Ghanem v. Warden Essex*

5

*Cnty. Corr. Facility*, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). A noncitizen receives a fundamentally fair bond hearing when the bond hearing provides the following: (1) "factfinding based on a record produced before the decisionmaker and [which is] disclosed to him or her"; (2) an opportunity to "make arguments on his . . . own behalf"; and (3) the "right to an individualized determination of his . . . interests." *Id.*

A bond hearing is individualized "if it is not so arbitrary that it would offend fundamental tenets of due process" and "if there is a discernible rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards, that suffices." *Vasquez-Rosario v. Noem*, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026) (quotation marks and citation omitted). These requirements presuppose an impartial decision-maker. *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). They also require that the decision be grounded in the evidence presented at the hearing and accompanied by a statement indicating the reasons for the decision and the evidence relied upon. *Id.*

Here, the immigration court went ahead with the hearing on the merits despite counsel's representations that he had no notice about it until the night before using the justification that Huang himself was mailed notice of the December 24th date on December 17th, and then was mailed notice about the rescheduled December 23rd date on December 19th. IJ Ranasinghe brought forth those facts herself – "I just want to note that this matter wasn't scheduled just, you know, recently." (Bond Hearing Tr., Civ. No. 26-813, ECF 8-1 at T6:21-23.)

December 19th was a Friday. Moreover, the IJ knew when she spoke that there was a language barrier. At the top of the bond hearing, after noting for the record that all the detainee respondents on the morning's Master Calendar docket at the Elizabeth Immigration Court were being produced at Delaney Hall via Webex, IJ Ranasinghe asked if Wong waived a Mandarin

6

interpreter for purposes of Huang's bond hearing, which he agreed to. Then, unsuccessfully, she attempted to have Huang state his name for the record. Twice Huang answered, but not in English, and Wong told the court "he says he doesn't understand English." (*Id.* at T3:14-25.) IJ Ranasinghe tried again -- "Name?" -- and gave up, satisfied that Huang was sufficiently identified because Wong saw him on the screen and said he was his client. (*Id.* at T4:4.) Yet moments later, she determined that mailing a notice in English to Huang on the Friday before the Tuesday hearing was notice, explicitly stating about Huang: "So he was aware." (*Id.* at T7:4.) This factual and consequential finding fails when the transcript shows that when Huang was asked to state his name for the record he didn't respond to the simple question, "Name?" and the IJ abandoned further efforts to communicate with him.

Moreover, the IJ compounded the inadequacy of notice by telling Wong "I appreciate you did not have notice, but [Huang] received notice [instead of Wong] because we did not have a new entry of appearance upon the remand from the District Court with the filing of the order with District Order [sic]." (*Id.* at T6:25-2.) The garbled ending of this sentence doesn't rob it of meaning: the court is telling Wong that his non-English speaking client was noticed instead of Wong because Wong should have provided a "new" entry of appearance for the hearing he just won. The government seizes upon this observation in its response to the Second Petition: "The IJ responded that notice was provided to Petitioner himself because Petitioner's counsel had not filed a notice of appearance." (Second Petition, ECF 8 at 3.) That's not exactly what the IJ said, and there is no reason given by the IJ or the government why the attorney of record on the successful First Petition should have to file a "new entry of appearance" to represent the petitioner at the bond hearing the district court ordered. Neither the word salad in the transcript nor the response comports with due process.

7

The Court holds that the bond hearing was conducted in a way that denied Huang due process.  The government prevailed on the theory that "the record is void of any type of tangible evidence" that Huang was not a flight risk, when Huang shows in his Second Petition that he had plenty of tangible evidence he was prevented from putting before the IJ.  Because the IJ proceeded on the merits in the face of counsel's lack of notice until the night before (never disputed), the IJ could rule:  "the Court has no evidence that [Huang] has a sponsor in the United States, nor that he has family ties.  I have no record of a fixed permanent address upon release.  No information about employment  So, for those reasons, the Court finds that respondent has not demonstrated that he's not a flight risk.  All right."  (Bond Hearing Tr., Civ. No. 26-813, ECF 8-1 at T7:25-8:3.)  The evidence was there, as this Second Petition demonstrates.

The materials Huang could have presented are central to a bond determination as they go towards flight risk and danger to the community.  Accordingly, the Court concludes that while facially the December 23, 2025 bond hearing checked the boxes, based on the constitutionally inadequate notice to his attorney Huang was deprived of the opportunity to place important evidence in the record, deprived of the opportunity for his attorney to argue on his behalf on the basis of that evidence, and deprived of the IJ's individualized determination based on a full record that would have existed if adequate notice of the hearing had been provided.  Accordingly, the Court grants Petitioner with a new bond hearing within seven (7) days of this Memorandum Opinion and accompanying Order.

**B.      PART TWO – Huang's Third Petition**

On March 22, 2026, Huang, proceeding *pro se*, filed a Third Petition (Third Petition, Civ. No. 26-2962, ECF 1), arguing that his detention since October 1, 2025, has become unreasonably

prolonged and therefore warrants immediate release.[2]  (Third Petition, ECF 1 ¶ 13.)  Huang further

contends that his continued detention violates due process and challenges the Immigration Judge's

denial of bond, asserting that he was not afforded an individualized custody determination.  (*Id.*)

Concurrently, Huang filed an Emergency Motion for Temporary Restraining Order ("Motion for

TRO") (Third Petition, ECF 2), alleging that he will suffer irreparable harm if ICE removes him

from the United States before his habeas petitions are decided.  (Motion for TRO at 2.)  On March

23, 2026, the Court enjoined transfer from the District of New Jersey.  (Third Petition, ECF 3.)

On June 4, 2026, Huang submitted a letter requesting the Court to adjudicate his habeas petitions.

(Third Petition, ECF 4.)  The Court did not order Respondents to answer.

Huang argues that his continued detention of approximately six months has become

prolonged and thus warrants immediate release.  (Third Petition, ECF 1 ¶ 13.)  The Third Circuit

recognized the concern that, despite an initial bond hearing, detention under § 1226(a) might

become unreasonably prolonged and may warrant relief beyond the bond hearing provided by the

statute and its implementing regulations.  *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d

274, 280 (3d Cir. 2018).  However, it declined to decide what those circumstances may be.  *Id.*

Here, Huang has been detained since December 3, 2025, but duration alone cannot "sustain

a due process challenge by a detainee who has been afforded the process contemplated by

§ 1226(a) and its implementing regulations."  *Id.* at 277.  "Unlike § 1226(c) detainees . . . who

were detained for prolonged periods without being given any opportunity to apply for release on

bond, [petitioner] was granted meaningful process prior to filing his habeas petition."  *Id.* at 279-

---

[2] The Court notes that while Huang alleges he has been detained since October 1, 2025 in his Third Petition (Third Petition, No. 26-2962, ECF 1 ¶ 11), his First Petition sets forth that he was detained on December 3, 2025, when he appeared at his scheduled ICE check-in appointment, which remains undisputed.  (First Petition, Civ. No. 25-18213, ECF 1 ¶ 2; Second Petition, Civ. No. 26-813, ECF 8.)

80. Huang has been detained for significantly less time than the petitioner in *Borbot*, who had been detained for two years before filing his petition. *Id.* Huang also had a bond hearing on December 23, 2025, fully discussed above, and will receive another bond hearing as a result of habeas relief granted on his Second Petition. Accordingly, the Court denies the Third Petition challenging his detention as unreasonably prolonged.

### III.    CONCLUSION

The Court grants habeas relief on Huang's Second Petition and denies relief on his Third Petition. Respondents shall provide Petitioner with a second bond hearing within seven (7) days of the issuance of this Memorandum Opinion and accompanying Order granting the Second Petition. Further, respondents shall confirm in writing that notice of the date and time of that hearing has been given to Huang's attorney on the Second Petition, counsel of record Chun W. Wong, Esq. Because the Court denies the Third Petition, the accompanying Motion for TRO is dismissed as moot. Appropriate Orders follow.

Date: July 27, 2026

*Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.